## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DAUNTLESS ENTERPRISES, INC., AND
KENNETH AYERS,**

      **Plaintiffs,**

      **v.**

**CITY WIDE FRANCHISE COMPANY, INC.,**

      **Defendant.**

**Case No. 2:23-CV-02273-JAR-TJJ**

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City Wide Franchise Company, Inc.'s Motion for Entry of a Protective Order (Doc. 38), filed June 30, 2023.  Plaintiffs Dauntless Enterprises, Inc. and Kenneth Ayers filed their Memorandum in Opposition to City Wide's Motion for Entry of Protective Order (Doc. 43) on July 3, 2023, which also requests entry of their own proposed protective order.  Defendant filed its Reply in Support of Motion for Entry of Protective Order (Doc. 44) also on July 3, 2023.  The motion is fully briefed and the Court is prepared to rule.  For the reasons set forth below, the Court grants Defendant's motion for entry of a protective order and will enter a Protective Order consistent with this Memorandum and Order in a separate filing.

I.     **Legal Standard**

Federal Rule of Civil Procedure 26(c) provides that a court may, upon a showing of good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a

specified way." The party seeking a protective order has the burden to show good cause for it.[1] To establish good cause, that party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[2] The decision to enter a protective order is within the Court's discretion.[3]

## II.    Background

Plaintiff Dauntless Enterprises, Inc. is one of Defendant's franchisees. Plaintiff Kenneth Ayers is the owner of Dauntless Enterprises, Inc. The relationship between Plaintiffs and Defendant is governed by a Franchise Agreement[4] that was set to expire by its terms on June 19, 2023 if not renewed. Plaintiffs desired to renew the Franchise Agreement for a ten-year term as provided for in the Franchise Agreement; Defendant refused to renew for the ten-year term, asserting that Plaintiffs had not met certain requirements under the Franchise Agreement to be eligible for such renewal.

Plaintiffs filed their Complaint against Defendant on June 16, 2023, asserting a single claim of breach of contract.[5] That same day, Plaintiffs filed a motion for a temporary restraining order seeking an order from this Court preserving the status quo by preventing the Franchise Agreement from expiring on June 19, 2023. Plaintiffs' motion for a temporary restraining order was later converted to a motion for preliminary injunction, with a hearing set for July 7, 2023. In conjunction with their motion for preliminary injunction, Plaintiffs filed a motion for expedited

---

[1] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[2] *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[3] *Id.* (citing *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995)).

[4] Doc. 1-1.

[5] Doc. 1.

discovery, which the court granted in part and denied in part.[6]  Defendant similarly filed a

motion for expedited discovery, which Plaintiffs consented to[7] and the Court granted.[8]

## III.    Discussion

Now before the Court is Defendant's motion for a protective order, seeking "to protect

the disclosure of information to third-parties, including third-party competitors."[9]  Plaintiffs

agree that certain information should be treated as confidential, and agree on most of the

language in Defendant's proposed protective order.[10]  However, Plaintiffs request that the Court

enter their proposed protective order which differs from Defendant's proposed protective order

in three ways: (1) by adding to the definition of confidential information; (2) by adding another

category of individuals who may view confidential information; and (3) by including a safe

harbor provision allowing Plaintiffs to testify regarding confidential information and introduce

evidence deemed confidential without being found to have violated the confidentiality provisions

of the Franchise Agreement.  Although the parties agree as a threshold matter that a protective

order in some form is appropriate here, the Court must still determine as a threshold issue

whether Defendant has made the requisite showing.[11]  Thus, the Court turns first to this threshold

issue, and then addresses the three differences in the parties' proposed protective orders in turn.

### A.    Defendant Has Shown Good Cause to Enter Protective Order

The Court in its discretion is satisfied that Defendant has shown good cause to enter a

protective order in this case.  Indeed, Defendant specified the information it is seeking to protect,

---

[6] Doc. 25.

[7] Doc. 29.

[8] Doc. 35.

[9] Doc. 38 at 4.

[10] Doc. 43 at 1.

[11] *See, e.g., Bryan v. Eichenwald*, 191 F.R.D. 650, 651–52 (D. Kan. 2000).

namely sensitive financial information as well as business and strategic decision-making processes which is not otherwise available to the public and disclosure of which could give its competitors a view of its operations and business.  Defendant also noted that the "universe of disputed documents is quite narrow, and may only involve a single document."[12]  As noted above, Plaintiffs do not challenge the need for a protective order; rather, they object to the exclusion of three proposed provisions, discussed further below.

The Court finds that Defendant has demonstrated sufficient good cause for the entry of a protective order here.  The parties seem to agree that the discovery here will include production of Defendant's business records and other sensitive, proprietary information.  "A protective order can maintain the confidential nature of this information while allowing efficient discovery, a worthwhile objective in this case."[13]  Therefore, the Court turns to the disputed provisions in the two proposed protective orders.

### B.    Definition of Confidential Information

First, Plaintiffs propose additional language in the section of the protective order defining "confidential information."  In relevant part, Defendant's proposed protective order defines confidential information as, "[s]ensitive business or commercial information, strategies, or plans, including operating manuals.  Plaintiffs propose adding to the end of that clause, "but excluding criteria City Wide uses or has used in deciding whether to renew franchisees, including Dauntless Enterprises."

Plaintiffs assert that this carve-out is appropriate because (1) the renewal criteria is in the Franchise Agreement which is available online; (2) any renewal information not in the Franchise

---

[12] Doc. 38 at 4 n.1.

[13] *Bowers v. Mort. Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 3328524, at *4 (D. Kan. Aug. 2, 2011).

Agreement is described in Mr. Hartman's declaration;[14] (3) Plaintiffs are bound by confidentiality provisions in the Franchise Agreement; (4) Plaintiffs will prove that Defendant acted in bad faith and Defendant should not be able to conceal its bad faith from the public; and (5) if Defendant uses secret renewal criteria, there is a strong public interest in knowing that criteria, particularly for prospective franchisees.

Defendant objects to the inclusion of this carve-out, arguing that Plaintiffs have not shown how Defendant's proposed protective order excluding such language would prejudice Plaintiffs, as opposed to the public at large.  As Defendant points out, once the party seeking entry of a protective order has met its burden, "the burden then shifts to the party seeking unrestricted disclosure to establish that such disclosure is relevant and necessary to the action."[15] Plaintiffs have failed to show that restricting the documents and information labeled as confidential from public disclosure is necessary to the limited proceedings before this Court—the preliminary injunction hearing.  Therefore, the Court in its discretion denies Plaintiffs' request to include this language in the definition of confidential information.

### C.      Who May View Designated Confidential Information

Second, Plaintiffs propose additional language in the section of the protective order regarding who may view designated confidential information.  Plaintiffs propose including as a category, "[o]ther franchisees and their counsel if the confidential documents or information are otherwise available to the franchisee who will be viewing the confidential documents and information."

---

[14] Doc. 39-2.

[15] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 249 (D. Kan. 2010) (first citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009); and then citing *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2012 WL 571824, at *7 (D. Kan. Feb. 12, 2010)).

Plaintiffs maintain that this additional language is appropriate because Defendant's other franchisees "are watching the case closely."[16]  Again, Defendant objects to the inclusion of this language, pointing to the fact that a restriction on Plaintiffs' ability to share confidential information with other franchises will not harm their ability to prosecute the present action.  The language proposed by Plaintiffs limits their ability to share confidential documents and information to other franchisees and their counsel if such documents or information are otherwise available to them.  Because anyone falling under this carve-out would already have access to such documents and information outside of these proceedings, the Court finds Plaintiffs' proposed carve-out unnecessary.  As such, the Court in its discretion denies Plaintiffs' request to include this carve-out in the definition of who may view designated confidential information.

### D.      Safe Harbor Provision

Third, Plaintiffs propose adding a final paragraph to the protective order that constitutes a "safe harbor" that Plaintiff Ayers may testify at trial regarding matters that are confidential in the Franchise Agreement without Defendant being able to deem his testimony or any exhibits to be a breach of the confidentiality provision of the Franchise Agreement.  In its reply brief, Defendant noted that it "does not object to the inclusion of a reasonable safe harbor provision in the protective order," but states that if Plaintiffs intend to offer testimony regarding confidential information, they would have to abide by the provision in the proposed protective order governing the use of confidential documents or information at trial or hearing.  Because Defendant does not object to the inclusion of the safe harbor provision as proposed by Plaintiffs, and because Plaintiffs have not objected to the provision of Defendant's proposed protective

---

[16] Doc. 43 at 3.

order regarding the use of confidential documents or information at trial or hearing, the Court in its discretion grants Plaintiffs' request to include the proposed safe harbor provision.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Entry of Protective Order (Doc. 38) is **granted**.

**IT IS FURTHER ORDERED** that the Court will enter a Protective Order consistent with this Memorandum and Order in a separate filing.

**IT IS FURTHER ORDERED** that to the extent documents have been withheld based solely on the lack of a protective order, such documents shall be produced forthwith in compliance with the Protective Order.

**IT IS SO ORDERED.**

Dated: July 5, 2023

S/ Julie A. Robinson
Julie A. Robinson
U.S. District Judge
